Hornblower, C. J.
The testator by his will directed, that if his personal estate should not be sufficient to pay his debts, his executors should sell and convey in fee simple, “ so much of his real estate as to fully pay and satisfy all just claims and demands.” He then devised his real estate, subject to the payment of his debts, one-half to his wife and the other half to his nephew Daniel Davis, for their lives, with certain limitations over. After the making of this will, the testator purchased another farm, and then died without altering or republishing his will, leaving John S. Stiers, the plaintiff in Certiorari, his heir at law.
In April, 1842, the executors exhibited an account to the Orphans’ Court, showing a deficiency of personal assets to pay the debts of the testator, and presented a petition to the Court setting forth, that he had discovered that the personal estate was insufficient to pay the debts, and requesting “ the aid of the court *53 in the premisesand stating that the testator died seized of “ one plantation situated in the township of Alexandria in the said county, adjoining lands of &c., containing one hundred and twenty-seven acres &cP
The land thus described, and the only land mentioned in the petition, was the farm the testator had purchased after he made his will as aforesaid. The usual rule to show cau.se having been made and advertised according to law, the court made an order or decree, in which, after reciting the previous proceedings, they ordered and directed the executor “to sell so much from off the eastern part of the farm purchased by the testator of the executors of Joseph Hawk dec. situate in the township of Alexandria &c. as will be sufficient to pay off and satisfy the debts now remaining unpaid and due from the testator for moneys borrowed by him in his lifetime, to pay for the said farm.”
This proceeding is erroneous in manner, and was manifestly wrong in design. It was an attempt by the executor, to cast the whole burden of paying the debts upon the heir at law in case of the devisees under the will of the testator. It is not necessary for us to decide whether the executor had power to sell the subsequently purchased farm or not. He certainly had ample authority by the will to sell the lands belonging to the testator when he made the will; or so much of them as might be necessary to pay the debts. If there were any equities between the devisees, and the heirs at law, arising out of the fact that the debt had been contracted in the purchase of the farm claimed by the heir at law, the executor should have left them to settle that matter by an appeal to the appropriate tribunal, and not have volunteered his services in the manner attempted. But the order or decree for sale is erroneous upon the face of it in several particulars. The account exhibited by the executor to show a deficiency of assets and which lies at the foundation of the order for sale, is a very extraordinary one, and upon the very face of it entirely conjectural. The executor charges himself with the amount of Inventory filed, four thousand two hundred and fifteen dollars and seventy-six cents, and then puts down, “ appraisal doubtful and desperate five hundred and fourteen dollars and ninety cents. Per contra, he sets down as due to sundry persons, naming them, seven or eight in number, on bonds notes and book *54 accounts, certain sums of money amounting to six thousand four hundred and forty-eight dollars, and then adds, “ expenses of settling the estate, say, seven hundred dollars;” making in the whole the sum of seven thousand one hundred and forty-eight dollars. It is not a little curious, that every one of those debts put down as due and owing, are stated at so many dollars, in round numbers without any fractions whatever; and this account, the executor has sworn to be true, according to the best of his knowledge and belief. But the decree is erroneous; First, Because, in the language of Ewing, C. J., in the State v. Conover, 4 Hals. 338, 344, “it was the plain duty of the Court, as preliminary to an order for sale, to ascertain and decide that such part of the personal estate as has come to the hands of the executor, has been applied to the payment of debts.” Instead of that, it appears from what the executor calls his account, and which he exhibited to the Orphans’ Court, that although the Inventory, exclusive of doubtful claims, amounted to four thousand two hundred and fifteen dollars; he had paid out only one hundred and forty-five dollars, while all the specified debts amounting to between six and seven thousand dollars, remained still due and unpaid by him.
Secondly, In my opinion, the order is erroneous, because the Orphans’ Court have not ascertained the extent of the insufficiency, nor designated in the order the sum to be raised by a sale of the lands. I do not know that this objection has heretofore received the consideration of this Court; but it seems to me all important that the court should ascertain, not only that the personal estate is insufficient, but how much it is insufficient, to the end that they may determine how much money it is wecessary to raise to pay off and satisfy the debts; and that the sum necessary to be raised, should be specified in the order. It is true, the language of the act is, Elm. Dig. 490, that “ if on full examination the court shall find that the personal estate is not sufficient to pay the debts, they shall order &c.” But it is manifest, they are not to make the order for sale, simply because there is a deficiency and without any regard to the amount of it; for the court is to order only so much of the lands sold as may be necessary to pay the debts remaining due. The order ought therefore, to specify the sum to be raised ; for whether the whole or a part *55 of the lands only is to be sold, must depend upon the amount necessary to be raised. This is necessary for the protection of the heirs at law; for if the sum necessary for the payment of debts should be raised on a part of the land ordered to be sold, the executor ought not to proceed any further and sell the rest of the land described in the order for sale, simply because it is embraced in the order. The object is to raise the deficiency, and when that is done the sale ought to stop.
But thirdly, The order is clearly defective and vicious, because it does not specify the lands to be sold. The direction, is to sell “ so much from off the eastern pari, as will be sufficient <&c.” But this is no designation, of part or quantity. The executor has only to begin his sales on the eastern part, and he may in that way sell the whole of the farm within the language of the order: What was said by Chief Justice Ewing in the case before cited, 4 Hals. 338, and by Chancellor Williamson, in the Administrators of Wilmurt v. Morgan, as quoted by the Chief Justice, is so full and plain on this point, that it is unnecesary to add any thing more.
The order for sale, must therefore be set aside and for nothing taolden, but whether with costs to the plaintiff in Certiorari or not, has been made a question by the counsel concerned, and the court Slave thought it a fit occasion to settle this often agitated matter.
The question of costs on Certioraris sued out under the common law jurisdiction of this court underwent a pretty full examination in the case of Aller et al. v. Shurts, 2 Har. R. 188. But the decision in that ease, went no further than to give costs to defendants in such Certioraris, when the order, decree or proceeding below brought by such writs into this court, was affirmed | or where the writ was quashed for irregularity, or dismissed for want of prosecution. The decision of the court in that ease, at least so far as my opinion was involved, was based principally on the settled practice of this court, sustained by the eases there cited and referred to. At the same time I was not a little influenced by the analogy between such writs of Certiorari, and writs of error and remarked that “ costs upon them, as in error, were clearly within the spirit and equity of the statutes giving costs in error.” But then the same analogy will compel us to refuse costs to the plaintiff in this case; for the statute never *56 gives costs to a plaintiff in error; it only subjects him to costs if he fails to maintain his writ. The reason for this has been supposed to be, that it would be unjust to subject the defendant in error, who was the successful party in the court below, to pay costs for the errors of that court. There seems to be a propriety in that rule, and we act upon the same principle, when we grant a new trial for a mistake or misdirection of the judge ; we refuse to make the party applying for the new trial pay the costs of the former trial.
If the remark, however, of Mr. Justice Southard, in Hann v. McCormick, 1 South. 109, is well founded, we ought to give costs in this case. He said, “ it was a general principle, that the prevailing party in suits in all courts of law, was entitled to costs; and that express statutory provision was necessary to prevent his claiming them in any case.” But I cannot see upon what grounds that remark was made. Costs, eo nomine, were certainly given by statute; and from time to time, the legislature have prescribed the services to be paid for, and the sums to be allowed. A party then cannot be entitled to costs, as such, unless the legislature have prescribed the items and the sums to be paid. I do not see then, how, in the absence of all such legislation, a statute can be necessary to deprive a party of his costs.
The result of my reflections upon this subject, is, that we cannot give costs to the plaintiff.

The decree of the Orphans’ Court reversed without costs.

Cited in Bray v. Neill’s Ex’x, 6 C. E. Gr. 349.